FOURNET, Justice.
 

 The H. C. Drew Manual Training School instituted this action against the Calcasieu National Bank in Lake Charles, in liquidation, and its three liquidators, to have can-celled its note in the sum of $10,000 payable to and held by defendant bank, and also for the return of real estate mortgage bonds of the Lake Charles Rice Milling Company
 
 *793
 
 of Louisiana valued at $10,000, which were pledged as collateral to its note, and also to recover certain amounts which had been paid to the defendant on the note, on the ground that the execution of the note and pledge was ultra vires and void.
 

 Defendant denied the allegations of plaintiff’s petition, and, in reconvention, sought to obtain judgment against plaintiff for the amount of the note, together with recognition of its right of pledge to the bonds.
 

 There was judgment in the lower court against the defendant ordering the cancellation of the note and the return to plaintiff of the proceeds derived from the sale by the sheriff of the pledged collateral and also for the amounts collected by defendant on the note, and dismissing defendant’s reconventional demand. From that judgment defendant has appealed devolutively.
 

 The trial judge, in his written reasons for judgment, accurately stated the facts and, in disposing of the issues involved, gave a thorough analysis of the pertinent authorities and their application to the facts of the case at bar. We therefore,' quote from the opinion, with approval, as follows:
 

 “Several years ago H. C. Drew died, leaving a will in which he devised to
 

 “ ‘Our institution,
 
 Manuel
 
 Training, to be established in the City of Lake Charles, La., for the purpose of teaching the youth of both sexes of the City of Lake Charles, La., and for the purpose of carrying out this, provision of my will I name and appoint Frank Roberts and Harry J. Geary as trustees whose duty it will be to carry out this provision of my will. Said trustees are charged with the organization of said institution * * *.’
 

 “Acting under the authority conferred by Act 124 of 1882 * * * the said ‘trustees’ organized a corporation ‘in compliance with the provisions of the last will and testament of Harrison C. Drew,’ with power to ‘hold, purchase, lease or sell real or personal property, necessary, incidental or proper for the provisions herein stipulated.’
 

 “The objects and purposes are declared to be ‘to carry out and make effective the provisions of the last will and testament of the late Harrison C. Drew for the establishment of a manual training school in the City of Lake Charles, Louisiana, where the youth of both sexes shall be taught.’
 

 “In August, 1931, the Calcasieu National Bank
 
 of
 
 Lake Charles, being in failing condition, it was necessary to secure some new capital, and Mr. Frank Roberts, Chairman of the Board of Directors of the said bank, and its largest stockholder, and who with Mr. Harry J. Geary constituted the sole members of the board of directors of the school, suggested to Mr. Geary that the school, which had less than $1,000.00 in cash, borrow from the bank the sum of $10,000.00, to be secured by certain real estate mortgage bonds owned by the school, in order to purchase stock in the new banking corporation to be formed as the successor of the old banking institution, and to be known as the ‘Calcasieu National Bank in Lake Charles’.
 

 “After some hesitancy on the part of Mr. Geary, he consented to the loan, the pledge
 
 *795
 
 and the purchase of 320 shares of stock in the new hank, the present defendant, and on August 26, 1931 Mr. Roberts and Mr. Geary for the school signed a note for $10,000.00 in favor of the bank, and pledged $10,000.00 in mortgage bonds to secure its payment.
 

 “Prior to this transaction, the school had already lost $5.0,000.00 which Mr. Roberts and Mr. Geary had invested in bank stock of the predecessor bank of the defendant, under the same management, including that of Mr. Roberts.
 

 “The $10,000.00 note was renewed several times, the last time on January 26, 1933, and certain interest payments were made thereon. The bank applied to the payment of the note interest payments made on the pledged mortgage notes, and a deposit of the school in the bank.
 

 “This is a suit for the cancellation of the said note, all payments applied thereon, with interest, and for a return of the pledged mortgage notes, the plaintiff urging:
 

 “1. That the relationship of trustee and cestui que trust existed between Mr. Roberts and Mr.
 
 Gary
 
 and the corporation, known as the school, and that as the power to borrow money and pledge assets of the school was not granted in the instrument creating the trust, the transactions complained of can be set aside.
 

 “2. That the corporation known as the H. C. Drew Manual Training School did not have the power to borrow money or pledge its assets,' and therefore the acts complained of were ultra vires, null and void. '
 

 “The facts recounted are not in dispute, and the case presents only legal questions for decision, the defendant contending that when the trustees under the will organized the H. C. Drew Manual Training School as directed by the will, and the corporation acquired the property previously held by the trustees, the trust was at an end.
 

 “The defendant also contends that the H. C. Drew Manual Training School had full authority to borrow money and pledge assets of the corporation to secure its payment.
 

 ******
 

 “Defining the powers of a corporation such as that here involved, Section 6 of Act No. 124 of 1882 reads in part as follows :
 

 “ ‘Said board of trustees shall administer the property entrusted to them in conformity with the directions contained in the act of donation, and shall have all the powers, needed in such administration, but cannot mortgage nor encumber the donated property except as may be prescribed in the act of donation.’
 

 “In this case we. find that the testator left property ‘to our institution,
 
 Manuel
 
 Training, to be established in the City of Lake Charles,’ and appointed trustees to ‘organize said institution’ and ‘carry out this provision of the will.’ The property was not devised to the trustees, but to an. institution to be organized in the future. The
 
 trustees
 
 never had any title, legal or equitable, to any part of the testator’s es
 
 *797
 
 tate. They were given the ministerial duty of organizing the institution. The
 
 executors
 
 of the will were given seizen of the testator’s estate.
 

 “A testator may leave his property to a corporation to be, organized in the future.—Milne’s Heirs v. Milne’s Executors, 17 La. 46; S R.C.L. 319.
 

 “Next we find that the trustees, complying with the testator’s directions, organized a corporation, in the articles of incorporation of which it is declared that certain of the ‘testator’s estate was bequeathed to an institution for manual training to be established in the City of Lake Charles, Calcasieu Parish', Louisiana,’ and that a corporation was thereby organized: ‘ * * to do all and every thing necessary to execute the dispositions contained in said last will and testament.’
 

 “Under these facts the will created a trust, for educational purposes, especially permitted by law, and named as trustee to carry out the, terms of the trust, not Mr. Roberts and Mr. Geary, but the institution the testator directed to be organized to carry out his desires, the H. C. Drew Manual Training School.
 

 “This is not a case, as is contended by counsel for defendant, where the testator left property to trustees who transferred it to a subsequently organized corporation and thus ended their trust. Here we have a case, as was held in the Milne case, supra, where the devise to a corporation, which the testator directed be organized, was conditional, and where the trust did not go into effect until the H. C. Drew Manual Training School was incorporated.
 

 “Since no sort of title in the property was devised to Mr. Roberts and Mr. Geary, as Trustees, and the property was devised to a corporation the testator directed be organized, and since the trust came into being only on the incorporation of the H. C. Drew Manual Training School, the trust is still in existence, and the authority of Mr. Roberts and Mr. Geary to make the note and pledge complained of must be determined by the acts above quoted, and defining the power of the trustee, the school, to make the loan and pledge.
 

 “The real estate mortgage bonds, pledged to secure the $10,000.00 note, were not originally donated by H. C. Drew to the school, but were bonds acquired with money earned by the trustee on the property originally donated. However, the prohibition against ‘mortgaging’ or ‘encumbering’ the donated property, provided in Section 6 of Act No. 124 of 1882 applies to this increment.
 

 “To encumber means, according to Webster’s New International Dictionary, to impede the motion or action of; to place a burden upon, especially to load with debts, or other legal claims.
 

 “Civil Code 3183 provides that: “ ‘The property of the debtor is the common pledge of his creditors, and the proceeds of its sale must be distributed among them ratably, unless there exist among the creditors some lawful causes of preference.’
 

 “The prohibition against encumbering property donated to a trustee for educational purposes, quoted above, read in con
 
 *799
 
 nection with C.C. 3183, must be held to be a prohibition against borrowing money.
 

 “Counsel for defendant urges that the court should literally and strictly construe Sections 6 of Act No. 124 of 1882, which prohibits encumbering in terms only property ‘donated’ to the trustee — that is, originally donated — since this act permitting the creation of charitable trusts is in derogation of established public policy against trusts in this state. This principle has no application to a statute plainly intended to change public policy, as does this one.
 

 “Section 8 of Act 124 of 1882 reads as follows:
 

 “ ‘Be it further enacted, etc., That the provisions contained in the Revised Civil Code, or other laws of this State relative to substitutions
 
 fidei commissae
 
 or trust depositions, shall not be deemed to apply to or in any manner affect donations made for the purposes and in the manner provided by this act, and all laws or parts of laws conflicting with the provisions of this act are repealed in so far as regards the purposes of this act, but not otherwise.’
 

 “This enactment constitutes a complete reversal of public policy on the questions therein covered, and the courts cannot apply any construction narrowing plain legislative intention favoring educational and charitable trusts.
 

 “The primary rule of construction of statutes is to ascertain legislative intention. A reading of the statute under consideration leads to the conclusion that a donor might, from then on, do almost anything he wished with his property if the donor had in mind educational or charitable purposes, with the exception that property could not be made non alienable, and that the legislature intended certain safeguards for such donations, one of which was the prohibition against mortgaging or encumbering the property donated. This was evidently for the purpose of preserving the property donated, and insuring its use for the benefit of educational or charitable purposes.
 

 “If there be in this case any doubt as to legislative intention, a liberal interpretation, and one designed to favor the classes of the public made the beneficiaries by the donor must be given to the statute.
 

 “Counsel urges that if the legislature had intended to prohibit the encumbrance of property earned or acquired by the donated property, it would have used such or similar terms, and would not have stated simply that ‘donated’ property could not be mortgaged or encumbered without express permission of the donor.
 

 “In Section 3 of the Act in question it is provided that ‘property donated can not ■ be made inalienable.’ Applying the rule of construction contended for, a donor could provide that after acquired property, or property purchased with money acquired from the sale of the donated property should become inalienable. Certainly that would be far from legislative intention, and yet the legislature in terms made only ‘donated property’ inalienable.
 

 “If the prohibition against encumbering ‘donated property’ is held to apply only to
 
 *801
 
 the property originally donated, then the trustee could sell all the donated proper-' ty, purchase other property, and mortgage or encumber the whole, and thus do indirectly what it is plain the legislature intended never should be done. Such construction would remove a plainly intended and most salutory safeguard around property donated for educational or charitable uses, and as that intention does not appear from a reading of the whole statute, the court cannot give the contended construction.
 

 “This case illustrates the necessity for the wise restraining provision in the statute under construction. Here we find a trustee without money on hand or in sight with which to pay taxes on considerable property (which subsequently was sold to the State for non payment of taxes), borrowing $10,000.00 and pledging real estate mortgage bonds to secure the loan, in order to obtain money to invest in capital stock of a corporation organized- to take over a failing institution, when $50,000.00 of the school’s money had already been lost in the investment in stock in predecessor banks under the same management.
 

 “The pledging of the mortgage bonds, and the borrowing of $10,000.00 and hence ‘pledging’ and encumbering all of the remainder of the trust property for the loan, were absolutely prohibited by the law, and were null and void as being ultra vires the powers of the trustee corporation.”
 

 For the reasons assigned, the judgment of the lower court is affirmed, at appellant’s cost.
 

 O’NIELL, C. J., did not take part.