### In re MYRA FOUNDATION.

In re Administration by A. W. STOKES and Murray Allen, trustees of the Myra Foundation, a charitable trust created by the Will of John E. Myra and organized as a domestic nonprofit corporation.

Leslie R. BURGUM, Attorney General of the State of North Dakota, and Carlton G. Nelson, State's Attorney of Grand Forks County, North Dakota, Appellants,

v.

MYRA FOUNDATION, a charitable corporation, and A. W. Stokes and Murray Allen, as trustees, Respondents.

No. 7959.

Supreme Court of North Dakota.

Dec. 21, 1961.

Leslie R. Burgum, Atty. Gen., Carlton G. Nelson, State's Atty., Grand Forks, and Francis Breidenbach, Asst. Atty. Gen., for appellants.

Day, Stokes, Vaaler & Gillig, Grand Forks, for respondents.

TEIGEN, Judge.

This is an appeal from an order of the district court denying appellant's petition for district court supervision of the administration of an alleged trust. The proceeding is premised on Chapter 59–04, NDCC, entitled "Administration Of Trusts." The proceeding was initiated by the Attorney General of the State with the State's Attorney of Grand Forks County joining as persons interested in an alleged trust estate, as authorized by Section 59–04–02, NDCC. The statute employed provides the procedure shall be by special proceeding. Section 59–04–01, NDCC. Chapter 59–04, NDCC, is a special group of statutes designed to provide a method for the supervision of trusts by the district courts. The Rules of Civil Procedure, as set forth in the North Dakota Rules of Civil Procedure, effective July 1, 1957, specifically exempt therefrom special proceedings. See Rule 81 and Table A of the Rules. The proceeding is not of an adversary nature but, nevertheless, is directed to certain parties in interest. A. W. Stokes and Murray Allen were designated in the notice hearing the petition as such parties. After hearing, the court also designated Myra Foundation, a corporation, as another party in interest and it too was served. All three parties appeared by written motion to dismiss, premised on Rule 12(b), and for a summary judgment of dismissal, premised on Rule 56 of said North Dakota Rules of Civil Procedure. In other words, the motions filed were specifically premised upon rules of practice not applicable to a special proceeding. However, there has been no objection to this method of procedure and the district court, it appears, considered the appearances to be in resistance to the petition filed and we, for the purposes of this opinion, shall consider the appearances to be general and in resistance to the petition.

There is no question of jurisdiction over parties. The question confronting the court is whether or not it had jurisdiction of the subject matter and, if it finds the evidence and proof sufficient for this purpose, it shall then enter its order that all further proceedings for the supervision of the administration of the trust shall be had in that court. Section 59–04–09, NDCC.

There is no issue of fact. The salient evidence consists of portions of John E. Myra's last will and testament, a portion of the articles of incorporation of the Myra Foundation, a corporation, and two decrees of partial distribution issued by the county court of Grand Forks County, which had jurisdiction of the probate of the estate of the testator.

John E. Myra executed a last will and testament on December 24, 1937. He later died and his will was admitted to probate in the county court of Grand Forks County, North Dakota, on August 23, 1939. The will provided for certain special bequests, the establishment of a trust of the residue and the establishment of a nonprofit charitable corporation to be formed for the purposes provided in the will. The corporation was formed while the estate was in the process of probate and before the court had distributed any of the corpus of the estate. It was named Myra Foundation. It was organized on April 28, 1941. The special bequests were paid and the residue was transferred directly to the corporation by two decrees of partial distribution made by the county court. The first decree of partial distribution was entered on June 27, 1941. It ordered the payment of the special bequests and the transfer of the real estate, a part of the corpus of the estate, to the Myra Foundation, a corporation. A second partial decree of distribution was entered on February 4, 1942, and it transferred to the said corporation the remaining personal property. The special bequests paid to nine legatees named in the will equalled $38,250. The estate was inventoried at $366,627.34 and the residue, after expenses, taxes and the special bequests, was distributed directly to the Myra Foundation, a corporation, absolutely. No property was conveyed or transferred to the trustee named in the will.

The respondents in this appeal, A. W. Stokes and Murray Allen, are trustees of the named corporation. The Myra Foundation is, a nonprofit benevolent or charitable corporation.

The Attorney General argues that the said A. W. Stokes and Murray Allen are trustees of the Myra Foundation, a charitable trust created by the will of John E. Myra and organized as a domestic nonprofit corporation; that, therefore, the administration thereof is subject to supervision by the district court under the provisions of Chapter 59–04, NDCC. This chapter provides for district court supervision of the administration of trusts. The respondents, A. W. Stokes and Murray Allen, and Myra Foundation, a corporation, made a party to the proceeding at the designation of the court, argue that the Myra Foundation, a charitable corporation, received its original property or capital directly from the estate of John E. Myra, deceased, as a gift to be used for the purposes for which it was formed; that it is not a trust and, therefore, not subject to supervision under the provisions of the said chapter. The respondents, argue the corporation is administering its property in accordance with its articles of incorporation and bylaws, that it is subject to the visitation of the Attorney General as any other charitable corporation, that by resisting this proceeding it is not attempting to hide or conceal any of its transactions and that, if it is determined to be a trust, the result would subject every other charitable corporation similar in nature located in this State to court supervision under this statute.

We will now set forth the important parts of the various instruments, heretofore referred to, necessary to a decision in this case.

Paragraph 2 of the will explains the intent and purpose of the testator as follows:

"Except for certain specific bequests hereinafter provided for, it is my will that all of my property, real, personal and mixed, where ever the same may be situated shall go to establish what shall be known as the MYRA FOUNDATION which shall be a permanent institution hereby established for charitable, character building, and educational purposes. The intent and purpose being that the principal derived from the sale of any part of my estate shall forever remain intact to be invested and re-invested so that only the interest or the net income from such investments and from all of the property in my estate shall be expended for such charitable, character building, and educational purposes."

Paragraph 3 of the will provides for a trust but empowers the trustees named to form a corporation to carry out a part of the duties designated to the trustee and provides that, if the corporation is formed, all of the property, except for the specific bequests, shall go directly to the corporation. Its salient parts read as follows:

"I therefore, hereby give, devise, and bequeath all of my property, real, personal, and mixed, where ever the same may be situated (except such property as may be necessary to provide for the specific bequests hereinafter mentioned) unto Amelia Unumb and her successors forever, as Trustee for the uses and purposes hereinafter provided for with full power to sell, mortgage, invest and re-invest all or any part of said property. Provided, however, that the net income from said property shall annually be given for such charitable, character building, and educational purposes as shall each year be determined by the Trustee or the corporation hereinafter mentioned, as the case may be. * * * In case of the death or resignation of Amelia Unumb or in the event of her disqualification, three Trustees shall be appointed by the resident Judge of the District Court at Grand Forks, from nominations presented by my attorney, Carroll E. Day, and such Trustees shall have all of the

powers and duties of such Trustee, and their successors shall be similarly appointed until the corporation is organized. The Court shall have power to remove Trustees at any time. My attorney, above named, shall be empowered to determine the selection of those to operate the corporation hereinafter mentioned, and to provide the plan for the selection of successors to those accepting that responsibility, all of which shall be done, if possible, after consultation with my sister, Amelia Unumb. * * * My trustee herein named, and her successors, shall have the right and power, subject to all other provisions of this instrument, to organize a corporation under the laws of this state to be known as John E. Myra Foundation or some similar name, in which event all of said property shall go to said Corporation which shall be organized with such powers and purposes as shall be designated by Amelia Unumb or under her direction, she to have absolute discretion, except that she shall bear in mind the intent and purposes herein expressed. * * * Said Foundation shall be incorporated if the purposes herein expressed are not thereby defeated and shall have absolute discretion as to investments."

The salient parts of the articles of incorporation of Myra Foundation are as follows:

"The initial object and purpose of this Corporation is to fulfill the wishes expressed by the late John E. Myra of Grand Forks, North Dakota in his Will, which was admitted to Probate in the County Court of Grand Forks, North Dakota, and to receive and administer according to the terms of said Will, the property therein bequeathed for 'charitable, character building, and educational purposes.' This Corporation shall have full power and authority to own said property, and to do all things necessary or incident to managing, controlling, and disposing of the same in order to fulfill the intent and purpose of said Will. (Section 1, Article II)

* * * * * *

"In order to fulfill the purposes expressed in Sections One and Two of this Article, it shall be the purpose of this Corporation to engage directly and indirectly in every lawful business; to purchase, manage, operate, control, sell, mortgage, incumber, transfer, own, receive, obtain, build, construct, improve, remodel, create, manufacture, mine, give away, donate or otherwise dispose of, all property and every interest in property, of every kind, nature and description whether now known or that may hereafter be discovered, including real, personal, and mixed property, and including contingent interests, remainders, reversions and expectant interests." (Section 3, Article II)

No property was decreed to the trustee named in the will. Two decrees of partial distribution were entered by the county court and are in evidence. These decrees convey the property at issue in this proceeding to the corporation absolutely. There is no evidence that A. W. Stokes and Murray Allen have obtained title to any of the property in issue and it is not so argued. By the articles they are named as trustees of Myra Foundation, a corporation. In reality, they are directors of the said corporation. A third directorship, provided for by the articles, is presently vacant. The title to this office is, by the said articles, termed "trustee." The articles of incorporation provide that the board of trustees shall be a self-perpetuating body. The term of office is for life. Vacancies shall be filled by the remaining trustees and they select a president from among their number. The articles provide that they shall have power to adopt bylaws and set forth their duties and obligations. They are, in fact, members of the governing body of the corporation and, as such, are directors of the corporation.

Paragraph 3 of the will establishes a trust in very definite language. The intent

appears clear. It sets forth the duties of the trustee, one of which is that a corporation shall be formed. It also provides that when the corporation is formed, the property shall go to the corporation.

There is no claim that the purposes and obligations of the trust provided in the will and the powers and purposes of the Myra Foundation, a corporation, are different. It clearly appears that the testator provided for a charitable trust and that he also provided for the formation of a charitable corporation. Both have origin and spring from the provisions of the will. The will sets up the trust. It gives to the trustee an additional power, one by which the trustee can provide another vehicle to carry out the duties and obligations of the trustee. When the corporation is formed within the framework of the will, it supersedes the trustee. The trust then ends because it has fully completed its function. Therefore, we have here a trust for the founding of a charitable corporation, as the will provides. When this has been done it accomplishes the trust. Where it was done while the estate was in probate, it was proper for the county court to transfer the property directly to the corporation. The will provided no restrictions on such a transfer and the corporation took both the legal and equitable estate. It does not hold the property in trust except as governed by its articles and bylaws. It is, of course, to be devoted to the purposes for which the corporation was created. This is not a true trust in the sense contemplated by Chapter 59–04, NDCC.

■ The trust created by the will had a twofold purpose: (1) To administer the funds and properties and carry out the charities provided until such time as a corporation is formed, and (2) To form a corporation as described in the will. It necessarily followed that when the corporation was formed, the property would be transferred to it and whether conveyance was by the trustee or by the county court is unimportant. Here the corporation was

formed before the county court, by decree, conveyed the property to the trustee and it was proper for the county court to convey the property by its decree directly to the corporation. When the trustee formed the corporation before the county court had transferred any of the property of the estate to the trustee, the trust was complete. The trust then terminated as it had completed its functions. This was clearly the intent expressed by the will.

"A valid charitable gift may be made to a corporation to be formed or created after the death of the testator in case of a will, or after the delivery of the deed in case of a gift by deed." 14 C.J.S. Charities § 32.

The following are cases in support of this principle: Second National Bank of Washington, D. C. v. Second National Bank, 171 Md. 547, 190 A. 215, 111 A.L.R. 711; Gray v. Peter Gray Orphans' Home & Mechanical Institute, 128 Md. 592, 98 A. 202; Fletcher v. Safe Deposit & Trust Co., 193 Md. 400, 67 A.2d 386; In re Secrest's Estate, 109 Neb. 431, 191 N.W. 663; In re Briglin's Will, 208 App.Div. 511, 203 N.Y.S. 646; Maynard v. Farmers' Loan & Trust Co., 208 App.Div. 112, 203 N.Y.S. 83; H. C. Drew Manual Training School v. Calcasieu National Bank in Lake Charles, 192 La. 790, 189 So. 137.

■ A corporation created in accordance with the provisions of a will and to which the testator's residuary estate is transferred by the county court, as directed by the will to be used by it for the purposes for which the corporation was created, does not hold the property in trust in the true sense of the term. It holds the property as its own to be devoted to the purposes for which it was formed. 10 Am.Jur., Charities, Sec. 37; 14 C.J.S. Charities § 49; Restatement, Second, Trusts, Sec. 348, Comment f.

The corporation does not hold the property in trust as contemplated under Chapter 59–04, NDCC, and the district court

had no jurisdiction to supervise the administration thereof pursuant to said laws. We, therefore, agree with the interpretation of the district court.

This opinion is in no way intended to limit or qualify the rights of the Attorney General to visitation of nonprofit corporations under other provisions of our statutes, nor is it intended to be a restriction upon the powers of the district court to supervise the administration of property held in trust by a charitable corporation.

The order of the district court is affirmed.

SATHRE, C. J., and BURKE, MORRIS and STRUTZ, JJ., concur.