207 So.2d 393 (1968)
AMERICAN LEGION ED BRAUNER POST NO. 307, INC.
v.
SOUTHWEST TITLE AND INSURANCE COMPANY, Two Wing Temple Church of God in Christ, Inc., and Register of Conveyances for the Parish of Orleans.
No. 2820.
Court of Appeal of Louisiana, Fourth Circuit.
February 5, 1968.
Rehearing Denied March 4, 1968.
Writ Granted April 11, 1968.
*395 Reed, Reed & Reed, Floyd J. Reed, New Orleans, for plaintiff-appellant.
Bienvenu & Culver, Robert N. Ryan, New Orleans, for Register of Conveyances for the Parish of Orleans, defendant-appellant.
Miranne, Grevemberg & Organ, Lee C. Grevemberg, New Orleans, for Southwest Title and Insurance Company, defendant-appellee.
Revius O. Ortique, Jr., New Orleans, for Two Wing Temple Church of God in Christ, Inc., defendant-appellee.
Lawrence A. Wheeler, New Orleans, for Mrs. Irma E. Foster and Mrs. Claire E. F. Williams, defendants-appellants.
Before REGAN, HALL, and BARNETTE, JJ.
BARNETTE, Judge.
On May 21, 1965, the Two Wing Temple Church of God in Christ, Inc., hereinafter referred to as "Two Wing," sold for $28,500 a certain building and plot of ground identified by municipal number 722 Octavia Street in the City of New Orleans to the American Legion Ed Brauner Post No. 307, Inc., hereinafter referred to as "The Legion." The building was formerly used by Two Wing as its church building for religious purposes.
Approximately a year before the sale of its property Two Wing had entered into a verbal agreement with Mrs. Claire E. F. Williams and Mrs. Irma E. Foster for rental of the raised basement portion of the church on a month-to-month basis for $160 per month. It was used by them to conduct a private school for retarded children. There can be no question that Williams and Foster were aware for some time before May 21, 1965, that the property was being offered for sale. On January 18, 1965, they obtained from Reverend Utah Smith, the pastor of the church, an instrument in writing purporting to be a lease of the portion of the building occupied by them for a period of five years at a monthly rental of $160. Reverend Smith was then blind and in ill health. He died six days later. The purported lease was *396 filed in the office of the Register of Conveyances for the Parish of Orleans, hereinafter referred to as the "Register," and on March 16, 1965, it was recorded in C. O. B. 668B, Folio 89.
The instrument was poorly composed and poorly written by one of the lessees from the dictation of Reverend Smith. There can be no doubt however that it was an attempt by Reverend Smith to lease the property owned by Two Wing, a corporate body, without the required resolution of authority of the board of trustees and without its knowledge. The Register, on his part, perhaps because of the poor condition of the lease, improperly indexed the lease in his records. Later, when requested by The Legion to issue a certificate of conveyance on the church property, the Register failed to pick up the lease and include it on this certificate.
Prior to May 21, 1965, The Legion applied to Southwest Title and Insurance Company, hereinafter referred to as "Southwest," for title insurance; and an interim binder was issued upon payment of a premium of $285. One of the requirements of Southwest was the procurement by The Legion of a certificate of conveyance from the Register of Conveyances. A clear certificate was obtained; and after the deed of conveyance of the property by Two Wing to The Legion, executed May 21, 1965, was recorded, the certificate was properly dated and signed showing the only alienation of the property by Two Wing to be its conveyance to The Legion. The Register concedes his oversight and neglect to show the purported lease to Williams and Foster.
Two Wing does not dispute its obligation to deliver possession of the property in question for immediate occupancy by The Legion upon consummation of the sale. When The Legion attempted to take possession it was met with opposition from Williams and Foster, claiming the right of possession for five years under the purported lease at $160 monthly.
By letter of June 30, 1965, The Legion, through its attorney, demanded of its title insurer Southwest that it do whatever was necessary to place it in possession of the property. At this point a conference was held by the attorneys representing The Legion, the Register, Southwest, and Two Wing. It was agreed among them that Revius O. Ortique, Jr., attorney for Two Wing, would file a possessory action on behalf of Two Wing against Williams and Foster for possession of the property. Such a suit was filed August 4, 1965, entitled "Two Wing Temple Church of God in Christ vs. Mrs. Claire E. F. Williams and Mrs. Irma E. Foster," No. 438-617 on the docket of the Civil District Court for the Parish of Orleans.
The attorney for The Legion admits the foregoing conference and agreement and the filing of suit in the name of Two Wing, but denies that the right of his client to bring an independent action for damages was waived.
By letter of August 27, 1965, The Legion, through its attorney, demanded damages from Southwest at the rate of $285 per month until it was secured in the possession of the property. However, Southwest took the position that it had fulfilled its contractual obligation to The Legion through the agreement by which Ortique filed the suit for possession, to which agreement The Legion's attorney was a party.
On January 26, 1966, The Legion filed this suit and named as defendants Southwest, Two Wing, and the Register, from whom it demanded damages in solido in the amount of $285 per month. It also prayed for judgment against Southwest for penalty and attorney's fees, charging arbitrary and capricious refusal to comply with the obligation imposed by the title insurance policy. Two Wing was also charged with bad faith as a basis for special damage, but this claim has been abandoned with the stipulation that there was no bad faith on the part of Two *397 Wing. A claim for attorney's fees was also made against the Register.
Southwest brought a third party action against Two Wing and the Register. Two Wing brought a third party action against the Register and Foster and Williams. The Register brought a third party action against Two Wing.
Defendant Southwest answered The Legion's petition admitting the essential allegations relative to the title insurance, the premium payment, the clear conveyance certificate, and the discovery of the adverse occupancy after the sale. Its defense was that following demand made by plaintiff, and the conference among the attorneys mentioned above, it discharged its obligation. It relied on clause 3(c) of the policy, which is as follows:
"The Company shall have the right at its own cost to institute and prosecute any action or proceeding or do any other act which in its opinion may be necessary or desirable to establish the title as insured; and the Company may take any appropriate action under the terms of this policy whether or not it shall be liable thereunder and shall not thereby concede liability or waive any provision of this policy."
It contended that its obligation to remove the encumbrance (the purported lease) could be undertaken by it directly or through others under 3(c) and that the action through Ortique was sufficient to discharge its obligation.
In its answer Two Wing admitted the oral agreement for lease of the church basement on a month-to-month rental at $160 per month. It alleged, and the fact was not disputed, that Foster and Williams, the tenants, had knowledge that the property was on the market for sale by Two Wing, and that "For Sale" signs had been posted prior to January, 1965.
Two Wing pleaded good faith. It denied any knowledge of the purported lease to Foster and Williams. It alleged that Reverend Utah Smith was without authority to execute the lease, and that it was done without the knowledge or authority of the corporation's board of trustees. It admitted the filing of the possessory action pursuant to the agreement among the attorneys. It assumed the responsibility for such action under its warranty of immediate occupancy to The Legion.
Two Wing pleaded the negligence of the Register in giving the clear conveyance certificate, upon which The Legion, Two Wing, and Southwest all relied, as the sole proximate cause of the damage resulting from the denial to The Legion of immediate occupancy of the property in question. Two Wing by third party petition sought recovery from the Register for any damage which it may be called upon to pay The Legion.
Alternatively, it also made Foster and Williams, the purported lessees, third party defendants; and it sought judgment against them in solido with the Register. The basis for this alternative demand is the alleged nullity of the lease and the knowledge of Foster and Williams that it was executed without corporate authority. It alleged that a denial of occupancy to The Legion by Foster and Williams was unlawful and their continued occupancy a trespass.
The Register, in answer to the principal and the third party demand, pleaded as a defense Two Wing's warranty to The Legion. He alleged that Foster and Williams caused plaintiff's damage, as they knowingly occupied the premises under an invalid lease. Further he averred that plaintiff's failure to take action to evict the unlawful occupants was the cause of damage, if any, to plaintiff.
By third party pleading, the Register made Two Wing a third party defendant, pleading that any negligence on his part was only "technical" or "constructive" fault and that the proximate cause of damage was Two Wing's breach of warranty to plaintiff. He asked for full indemnity *398 against Two Wing for any damages he might be called upon to pay to The Legion.
Third party defendants Foster and Williams, by separate pleadings, answered admitting the lease and the Register's neglect to show it on the conveyance certificate. In all other respects their answers are a substantial general denial. The possessory action filed by Two Wing against Foster and Williams was consolidated with the suit filed by The Legion. In this posture the issues were tried below.
Judgment, as finally amended, was rendered on December 14, 1966, in favor of The Legion against Southwest, Two Wing, and the Register, in solido, in the sum of $120 per month from May 21, 1965, to November 21, 1966 (the date the judgment was first rendered), a total of $2,160 with interest and costs. The third party demand of Southwest against Two Wing was allowed for such sums as Southwest might be forced to pay The Legion in the principal judgment. The third party demands of Two Wing were recognized against the Register and Foster and Williams, in solido, for such sum as Two Wing might be called upon to pay under the judgment. The third party demands of the Register against Two Wing, and Southwest against the Register, were dismissed. The judgment made no mention of The Legion's demands for penalties and attorney's fees, thus we construe this as a rejection of these demands.
The Legion, the Register, and Foster and Williams have appealed. The Legion complains of the insufficiency of the award and of the rejection of its demands for penalties and attorney's fees. The Register has appealed from that part of the judgment which condemns him to pay damages and which rejects his third party demands against Two Wing. Foster and Williams specify as error that part of the judgment which casts them, in solido, with the Register, in favor of Two Wing.
Southwest and Two Wing did not appeal and are before us as appellees.
A separate judgment was rendered, signed, and filed in the consolidated case. No appeal was taken from that judgment.
Before discussing the merits of this involved litigation we will dispose of the exception of res judicata filed in this court by Mrs. Irma E. Foster and Mrs. Claire E. F. Williams, made third party defendants by Two Wing. Their exception is based on the fact that the possessory action brought by Two Wing against them, which was consolidated with this proceeding for trial below, has been concluded by a separate judgment rendered therein from which no appeal was taken. They allege that therefore under LSA-C.C. art. 2286, this constitutes a bar to Two Wing's third party demand against them in this proceeding. The exception is without merit and must be denied. The thing demanded in the two actions is not the same. In the first suit the thing demanded was the right of possession of the property and damages and alternatively an order requiring defendants to assert an adverse claim of ownership under LSA-C.C.P. art. 3662(2). The damages demanded in that suit are not founded on the same cause of action as those alternatively demanded in this proceeding. The demand of Two Wing against these third party defendants in this proceeding is for judgment in solido with the Register for such amount as Two Wing may be called upon to pay The Legion as a result of a judgment against it in favor of The Legion. The requirements of LSA-C.C. art. 2286 for maintaining the exception of res judicata do not exist here, hence the exception is dismissed.
There is only one seriously disputed factual question which was raised during the trial, and this must be disposed of at the outset. Lawrence A. Wheeler, attorney for Williams and Foster, testified about a conversation which he had with Floyd J. Reed, attorney for The Legion, in the Civil Courts Building, during which, it is asserted by Wheeler, Reed was informed by him that his clients had a recorded lease on the *399 property which The Legion was then negotiating to purchase and that he would give Reed the Conveyance Book number. He fixed the time of the conversation prior to May 21, 1965. Reed admitted having had a conversation with Wheeler when the recordation of the lease was discussed, but stated it was after the execution of the deed of conveyance to his client.
The parties who would benefit most from Reed's prior knowledge that the lease was recorded are the three principal defendants: Southwest, Two Wing, and the Register. However, none of them contended in oral argument or in brief that Reed had this knowledge. We can find no other evidence which indicates that Reed did indeed have knowledge of the lease as Wheeler alleges. Rather the evidence tends to support the contrary conclusion. Therefore we find as a fact that Reed did not have knowledge of the lease prior to the sale.
Except for the issue of quantum of damages there is no other material issue about which there is serious dispute or disagreement among the parties.
Two Wing is an incorporated church body whose powers are vested in a board of trustees. The board had no knowledge of the purported lease executed by its pastor, and we hold, as did the trial court, that the purported lease of January 18, 1965, was a nullity and that Foster and Williams were not entitled thereunder to continue occupancy of the rented property after May 21, 1965.
There is nothing in the record to indicate bad faith on the part of Two Wing, and it is liable solely on its obligations to its vendee. By the express provisions of the deed of conveyance, it stated that the property had not been alienated by it and that it was subject to no encumbrance, except those specifically enumerated and declared. Two Wing concedes that it, as seller, was obligated both to deliver the property and to warrant The Legion's peaceable possession. LSA-C.C. art. 2475. It is therefore liable to plaintiff in damages for breach of the first of these two obligations. LSA-C.C. art. 2486; Derbonne v. Burton, 189 So. 473 (La.App. 1st Cir. 1939).
Foster and Williams prevented delivery of possession and occupancy to The Legion by their adverse possession under an invalid lease. Their continued occupancy, even though without consent of the owner, obligated them for payment of a reasonable rental and such other damages as their unlawful occupancy caused The Legion. However, since they are not parties defendants to the plaintiff, The Legion, and the plaintiff seeks no judgment against them directly, they will be cast in judgment only to Two Wing under its third party demands against them.
The Register of Conveyances clearly is liable to The Legion, Southwest, and Two Wing for such damage as his negligence in omitting the lease from the conveyance certificate issued by him, upon which certificate the parties relied in good faith, caused them. LSA-C.C. art. 2257; Gordon v. Stanley, 108 La. 182, 32 So. 531 (1902). The fact that the lease was not valid is no defense. It is the duty of the Register of Conveyances in issuing a certificate to show all encumbrances. LSA-C.C. art. 2257. It is for the parties concerned to determine their validity and effect and to be governed accordingly.
The Register cannot escape liability for his negligence upon the argument that Two Wing had warranted to The Legion that the property was free from encumbrance. Furthermore his argument that plaintiff's damage resulted from its own failure to take action to evict the adverse occupants under an invalid lease, rather than from any negligence attributable to him, is untenable. We will discuss below the action taken by The Legion in this respect.
Southwest Title and Insurance Company's liability to plaintiff is governed by *400 the terms of its policy of title insurance. It insures:
"* * * against loss or damage [within the policy limits] * * * which the Insured shall sustain by reason of:
"Any defect in or lein or encumbrance on the title to the estate or interest covered hereby in the land described or referred to in Schedule A, existing at the date hereof, not shown or referred to in Schedule B or excluded from coverage in Schedule B or in the Conditions and Stipulations; or unmarketability of such title; or lack of a right of access to and from the land; all subject, however, to the provisions of Schedules A and B and to the Conditions and Stipulations hereto annexed * * *."
Among the stipulations is clause 6(c), the pertinent part of which is as follows:
"No claim for damages shall arise or be maintainable under this policy (1) if the Company, after having received notice of an alleged defect, lien or encumbrance not excepted or excluded herein removes such defect, lien or encumbrance within a reasonable time after receipt of such notice * * *."
Black's Law Dictionary, Fourth Edition, defines incumbrance (encumbrance) to be "any right to, or interest in, land which may subsist in another to the diminution of its value, but consistent with the passing of the fee. * * * A claim, lien, charge or liability attached to and binding real property." Webster's New International Dictionary, Second Edition, defines encumbrance: "Law. A burden or charge upon property; a claim or lien upon an estate which may diminish its value; specifically any interest or right in land existing to the diminution of the value of the fee, but not preventing the passage of the fee by conveyance." In H. C. Drew Manual Training School v. Calcasieu Nat. Bank in Lake Charles, 192 La. 790, 189 So. 137 (1939), the Supreme Court approved an earlier identical Webster definition.
The recorded lease to Williams and Foster, though poorly drawn, was sufficiently clear and free of ambiguity to have the legal effect intended, if it had been executed under proper corporate authority. Its invalidity on this account could not have been determined by an inspection of the lease as recorded. Clearly it was an "encumbrance" against the property within the legal definition of the word and the intent of the policy.
This then raises the question whether Southwest did remove the encumbrance within a reasonable time after receipt of notice. If not, its liability under the above-quoted coverage clause for damages claimed must be given effect.
Southwest admits that The Legion's attorney made demand by letter of June 30, 1965, that Southwest "do all that is necessary and proper to place the purchaser in full and undisturbed possession of the premises as soon as reasonable and proper." Another conference was then held among the attorneys at which time the possessory action later filed by Two Wing was agreed upon. The Legion's attorney was agreeable to this procedure. Southwest relies upon this as a discharge of its obligation under clause 3(c), quoted earlier.
Conceding arguendo that such response to plaintiff's demand might have been authorized by the terms of the policy and assented to by plaintiff's attorney, the fact is that the action taken by Two Wing, upon which Southwest relies, was ineffective and of no benefit to plaintiff. If its obligation under the policy could be discharged by the simple expediency of filing a suit, no matter how vain and ineffective, the policy would be meaningless and of no practical value to the insured. Therefore it would have made no difference if Southwest had brought the action itself in its name or in the name of The Legion. Southwest could have avoided an action for damages either by voluntarily compensating plaintiff for that period of time plaintiff was unable to possess the property or by *401 removal of the encumbrance, but not merely by filing a suit. The Legion finally succeeded in evicting the unlawful tenants at its own expense upon a judgment obtained by it in a separate and independent proceeding March 8, 1967. This fact was stipulated by the attorneys for all parties on argument of the case before this court.
In his reasons for judgment in this case, the trial judge said the lease was "null and void" because the board of trustees did not at any time authorize the lease, and said, "[T]here will be a judgment * * * recognizing the right [of Two Wing] to possess the property in question." The judgment signed and filed in the consolidated case merely decreed that Two Wing "be restored to the possession" of the property.
The lease, upon which the adverse occupants possessed the property, was a valid encumbrance on its face and not until the court decreed to the contrary could the adverse occupants be dispossessed. The judgment merely recognizing Two Wing's right to possession did not effectively remove the encumbrance. There was no eviction; adverse occupancy of the property by Foster and Williams continued; and plaintiff's use and enjoyment of the property was prevented until it obtained a judicial eviction more than three months later.
We therefore hold that Southwest did not "remove" the "encumbrance" to plaintiff's title "within a reasonable time" after receipt of notice and demand, as required by clause 6(c). Therefore under the provisions of that clause plaintiff's claim for damages is maintainable.
There is no merit in Southwest's argument in brief that "any possible suit for damages which could accrue to the insured and which could have been filed by Southwest Title was voided when Reed [plaintiff's attorney] undertook a direct action wherein he made Southwest Title a co-defendant." Southwest could have, under the terms of the policy, brought an eviction suit against Williams and Foster in the name of its insured who was owner of the property. There was nothing in the action of Two Wing or the damage suit by The Legion which would have precluded such action. The Legion also might have brought an eviction suit at an earlier date, but it was the primary obligation of Southwest, under the policy provisions to do so. Had Southwest done so promptly, or within a reasonable time, the damages might have been substantially less.
This brings us to a consideration of the basis for computation of plaintiff's damage.
Plaintiff demanded $285 per month from May 21, 1965, until such time as it gained possession of the property. This figure, as a measure of its damage, was claimed on the basis of a fair return on its investment of $28,500. Alternatively by supplemental petition, The Legion attempted to show this amount to be its loss from anticipated additional revenues from the use of its entire property into which this adjoining property was to be assembled.
The principal witnesses on the issue of damage were two real estate brokers who testified as experts in the field of real estate investments, values, and rentals. V. G. "Bob" Warner was called by plaintiff and Jim Maloney, by the defendant Register. Warner made no appraisal of the property but testified that a reasonable return on an investment in real estate varies according to whether or not it is all in one location, as a single building as opposed to scattered properties; the use of the property; its age; cost of upkeep; and other factors.
Warner's estimate of a 12-percent per annum gross in rental on the subject property, representing a fair return on an investment of $28,500, was arrived at by taking seven listings of property offered for sale in the columns of the Times Picayune of July 3 and September 25, 1966. The listed properties which he said were *402 reasonable comparables to the subject property were represented as yielding in rent from 10.4-percent to 18-percent per annum on the values respectively indicated by the "asking" prices for sale. He arrived at 12-percent per annum, or 1-percent per month ($285), as a reasonable fair average return on the "investment."
Maloney testified that as a rule of thumb, 1-percent per month is considered a fair return to be expected on a real estate investment in this locality. He testified to comparable rentals of apartment units in the general area, but admitted that no comparables had been found involving this type of building used as a school or for similar purposes. He testified that the property was being put to use at its highest value and that $160 per month gross was its fair market rental value.
He estimated that, as the lessor was obligated to pay approximately $40 per month in insurance, taxes, and utilities by the terms of the purported lease, $120 per month would be the net amount realized by the lessor each month. Therefore, he stated that $120 per month would be a fair amount as a damage award.
In support of its alternate basis of computing damages, John A. Gurovich, Jr., a member of The Legion, testified for plaintiff. The Legion home is located on the same square as the subject property and faces Magazine Street. Gurovich testified that The Legion home is used for rental for wedding receptions, private parties, etc., and that the average rentals are three per month at $115 each. He said the Two Wing property was acquired with the view of clearing the lot for use in parking automobiles as the property was contiguous to The Legion home. He said the increased parking facility would enhance rental attraction of the home and that its monthly rentals would be increased from three to five. Accordingly, he estimated the loss to The Legion at $230 per month.
Obviously this is highly speculative and cannot be accepted as a basis for computing the extent of damage.
The reasonable return on a real estate investment, used by the witness Warner as a basis for computing damage, is not fairly applicable to the factual situation here. The Legion did not purchase the property for an investment, but for the admitted purpose of converting it into a parking lot. Its value to plaintiff for a specific use, especially because of its location, was a prime consideration in its purchase. Warner made no appraisal of the property, but assumed its value was that which plaintiff had paid. As a matter of fact, Two Wing had already contracted to sell the property for $4,000 less when The Legion offer of $28,500 was made. It defaulted on its first contract to sell, paid the penalty, and then sold to The Legion. The rule-of-thumb basis of average rental on a real estate investment used by Warner must be rejected.
The most reasonable basis, and the one which we accept, was that used by the witness Jim Maloney. Since the property was actually rented for $160 per month for a year or more prior to the sale in question, we will accept the testimony of Maloney that this represented its fair market rental value. However, we reject his reduction of the approximate sum of $40 per month, by which he arrived at the net return to the lessor of $120. Obviously the owner-lessor is entitled to the gross return.
The trial court allowed $120 per month without stating in its reasons for judgment the basis upon which this amount was allowed. It did say however that the allowance would be "for the period of time that the American Legion has been denied access to the premises to wit: from the date they purchased the same until the present time, or the date of this Judgment." However, as noted, the plaintiff was not able to obtain possession on the date of the judgment. In fact it did not obtain possession until March 9, 1967, a fact stipulated by all parties. Therefore the award will be *403 increased to $160 per month from the date of purchase, May 21, 1965, until March 9, 1967, the date plaintiff gained possession of the property.
We now address ourselves to the issue of penalties and attorney's fees which plaintiff seeks from each of the three defendants: Southwest, Two Wing, and the Register.
Plaintiff by stipulation in oral argument before this court has conceded that Two Wing acted in good faith. As we know of no law which in the absence of fraud or bad faith would entitle plaintiff to these penalties and attorney's fees, we must to this extent reject plaintiff's demand against Two Wing.
Plaintiff has also failed to show that the Register was guilty of fraud or bad faith. We know of no law which entitles plaintiff to penalties and attorney's fees from the Register solely because his negligence has been established. Therefore plaintiff's demands against the Register for penalties and attorney's fees also will be dismissed.
The liability of the defendant Southwest for penalty and attorney's fees is, however, governed by the provisions of the contract of insurance and pertinent statutes.
The provisions of LSA-R.S. 22:658 are applicable to title insurance contracts. LSA-R.S. 22:5(2) defines an "insurer," as referred to in the Insurance Code unless the context otherwise requires, as every person engaged in the business of making contracts of insurance, other than a fraternal benefit society. LSA-R.S. 22:6(9) includes Title Insurance in its classification of insurance and defines it as insurance of owners of property against loss by encumbrance, or defective titles, or adverse claim to title and services connected therewith. LSA-R.S. 22:658 states that all insurers issuing any type of contract (other than life, health and accident), hence including title insurers, are subject to the provisions which Section 658 contains. This section provides that a penalty of 12-percent damages on the total loss together with reasonable attorney's fees will be imposed on an insurer upon his failure to make payment within 60 days after receipt of proof of loss and demand therefor, "when such failure is found to be arbitrary, capricious, or without probable cause."
Here, as in workmen's compensation cases, a proof of loss cannot be made in terms of a fixed amount because loss continues until such time as the cause of damage is removed. Therefore demand for discharge of the obligation imposed by the terms of insurance is sufficient to bring the failure within the provisions of the statute. As pointed out above, Southwest's obligation was to remove the encumbrance within a reasonable time or voluntarily compensate plaintiff for the period that it was unable to possess the property.
There can be no serious argument that Southwest was not dilatory or that it acted with reasonable diligence. It was not precluded from taking some affirmative action to remove the encumbrance, independently of the action taken by other parties in interest. Had it done so the encumbrance could have been removed and damages might have been avoided. We hold that it was arbitrary and capricious and the penalty imposed by LSA-R.S. 22:658 is applicable.
As to the amount of attorney's fees which plaintiff is due in this situation, we are cognizant of the fact that this court may make its own estimation as to the value of the services rendered. Gallagher v. Gallagher, 190 So.2d 916 (La.App.2d Cir.1966), and cases cited therein. We have considered the unusually complicated issues and the number of parties with conflicting interests and claims, the extensive pleadings, the four days of trial in the court below, and the amounts of damages involved; and we conclude in our discretion that attorney's fees in the amount of $1,000 is reasonable. Judgment will be given accordingly *404 against the defendant Southwest Title and Insurance Company.
We now turn to the various third party demands filed in this suit. Since the damages incurred herein resulted from the negligence of the Register of Conveyances in omitting the lease from the conveyance certificate, the defendant, third party plaintiff Two Wing is entitled to judgment against the Register on its third party demand.
Williams and Foster, made third party defendants by Two Wing, occupied the property in question until finally evicted by The Legion on March 9, 1967a total of 21 months and 19 days. A tender of one or more rental payments after May 21, 1965, was made but not accepted by Two Wing. Their continued occupancy for 21 months and 19 days obligates them for payment of damages based on rental value which we have found to be reasonable. The fact that they paid rent only nine months a year under rental agreement with Two Wing is no bar to full payment after May 21, 1965, for the total number of months their adverse possession prevented plaintiff's use and enjoyment of its property.
Since plaintiff, The Legion, did not make Williams and Foster parties defendants and the only demand made against them was by Two Wing as third party plaintiff, we have no pleadings before us upon which we can cast Williams and Foster in judgment except in favor of Two Wing.
Southwest's third party petition against Two Wing and the Register primarily alleges Two Wing's liability to it based upon Two Wing's breach of warranty to its insured, alternatively it alleges the liability of the Register. In its prayer it prays first for third party judgment against Two Wing and the Register, jointly and in solido, and alternatively against either of them for such damages it may incur under the principal demand. The trial judge in his reasons for judgment gave no reasons for dismissing Southwest's third party demand against the Register. He apparently treated Southwest's third party pleading as a demand primarily against Two Wing and only alternatively against the Register and granted third party judgment against Two Wing only. The judgment expressly denies its third party demands against the Register. Since no appeal was taken by Southwest, nor the appeal answered by it in this court, this part of the judgment is final, and we have no need to consider the matter further to determine if Southwest was entitled to a third party judgment against the Register.
For these reasons the judgment appealed from is amended and recast so as to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, American Legion Ed Brauner Post No. 307, Inc., against the defendants Southwest Title and Insurance Company, Two Wing Temple Church of God in Christ, Inc., and the Register of Conveyances for the Parish of Orleans, individually and in solido in the sum of $160 per month, commencing May 21, 1965, to March 9, 1967, or a total of $3,461.27, together with legal interest from date of judicial demand until paid.
It is further ordered, adjudged and decreed that there be an additional judgment in favor of American Legion Ed Brauner Post No. 307, Inc., against Southwest Title and Insurance Company, for 12-percent penalty on the amount of the principal judgment with interest and $1,000 for attorney's fees.
It is further ordered, adjudged and decreed that there be judgment herein in favor of Southwest Title and Insurance Company, third party plaintiff, against the Two Wing Temple Church of God in Christ, Inc., third party defendant, for any sum excluding costs, penalties, and attorney's fees, which Southwest Title and Insurance Company pays under this judgment.
*405 It is further ordered, adjudged and decreed that there be judgment herein in favor of Two Wing Temple Church of God in Christ, Inc., third party plaintiff, against the Register of Conveyances for the Parish of Orleans, Mrs. Irma E. Foster and Mrs. Claire E. F. Williams, third party defendants, in solido, for any sum including costs which Two Wing Temple Church of God in Christ, Inc., pays under this judgment.
It is further ordered, adjudged and decreed that the third party demand of the Register of Conveyances for the Parish of Orleans against Two Wing Temple Church of God in Christ, Inc., be and the same is hereby dismissed.
It is further ordered, adjudged and decreed that the third party demand of Southwest Title and Insurance Company against the Register of Conveyances for the Parish of Orleans be and the same is hereby dismissed.
As amended, and in all other respects, the judgment of the lower court is affirmed.
One-half the costs in both courts are assessed against Two Wing Temple Church of God in Christ, Inc., the Register of Conveyances for the Parish of Orleans, Mrs. Irma E. Foster and Mrs. Claire E. F. Williams. Southwest Title and Insurance Company, individually is cast for the remaining one-half of all costs.
Amended and affirmed.

ON APPLICATION FOR REHEARING
In application for rehearing, the defendant Southwest Title Insurance Company has brought to our attention our error in the second paragraph of the decree in our original opinion, wherein we assessed the 12-percent penalty "on the amount of the principal judgment with interest and $1,000 for attorney's fees [emphasis added]." The words "with interest" should be and are now deleted from the decree. Marine Bank & Trust Co. v. Home Ins. Co., 170 La. 193, 127 So. 598 (1930); Doty v. Central Mutual Insurance Company, 186 So.2d 328 (La. App.3d Cir. 1966), certiorari denied, 249 La. 486, 187 So.2d 451.
With this correction, the application for rehearing is refused.