334 So.2d 437 (1976)
CONTINENTAL AUTOMOBILE ASSOCIATION, INC.
v.
Wilburn P. HANSEN, Jr.
No. 7338.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1976.
*438 Richard C. Buckman and Morris B. Phillips, New Orleans, for plaintiff-appellant.
Donald G. Perez and Lester J. Waldmann, New Orleans, for defendant-appellee.
Frederick S. Haygood, Metairie, and Bruce S. Johnston, Jefferson, for third party defendant-appellee.
Before SAMUEL, LEMMON and STOULIG, JJ.
SAMUEL, Judge.
Plaintiff filed this suit against Wilburn P. Hansen, Jr., to recover property damage to its boat, damage allegedly caused by the defendant when he struck the stern portion thereof with his outboard hull while plaintiff's boat was moored in a boathouse in Sellers Canal in St. Charles Parish. Defendant answered, denying negligence and averring contributory negligence on the part of plaintiff. In addition, defendant filed a third party petition against the marina in which the boat was moored (asserting defective construction of the boathouse) and against Allstate Insurance Company under the liability portion of his homeowners policy with that insurer. All state answered the third party demand, denying any coverage under the circumstances.
After a trial on the merits, there was judgment on the original demand in favor of plaintiff for $1,349.74. Both third party demands were dismissed. Defendant has appealed. In this court he contends: (1) plaintiff cannot recover because of its contributory negligence; and (2) there is coverage under his policy with Allstate, and accordingly, that third party defendant is liable to him for the cost of defending this suit and for reimbursement of the amount he is required to pay under any judgment rendered against him. Appellant has abandoned his third party demand against the marina.
On March 11, 1972, the defendant purchased a hull powered by a 55 h.p. outboard motor, both new. The following day, March 12, he launched the boat in Sellers Canal. He managed to get the motor started but it would not keep going in neutral and he allowed the boat to drift away from the dock while he was trying to get it started and running. When the motor finally started, he pushed the lever control out of neutral and into forward, but nothing happened; the motor coughed and sputtered but the boat did not move. He then pushed the lever control all the way forward and as he looked back at the motor it caught in that fast forward position. The boat leaped forward, out of control, and struck the stern and motor assembly of plaintiff's inboard-outboard which was moored in its boathouse with approximately 18 inches of its stern protruding out of the boathouse and into the canal.
We find no evidence whatever in the record to support appellant's first contention, that plaintiff was guilty of contributory negligence in allowing a portion of its boat to protrude into the canal. The record establishes that, even with the protrusion, there was ample room in the canal for passage by larger boats and even barges. This aspect of the case requires no further discussion.
We do find merit in appellant's second contention relative to coverage under his Allstate homeowner's policy. Coverage is set forth in Section II of the policy. The limit of liability under Section II, Coverage E "Personal Liability (Bodily Injury and Property Damage)" is $25,000 for *439 each occurrence and, in pertinent part, Coverage E reads as follows:
"COVERAGE EPERSONAL LIABILITY
This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurence. This Company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient."
Allstate relies on the following pertinent policy language under "Exclusions":
"This policy does not apply:
1. Under Coverage EPersonal Liability and Coverage FMedical Payments to Others:
. . . . . .
b. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft:
. . . . . .
(2) powered by any outboard motor(s), singly or in combination of more than 25 total horsepower, if such outboard motor(s) is owned by any Insured at the inception of this policy and not endorsed hereon, unless the Insured reports in writing to this Company within 45 days after acquisition his intention to insure the outboard motor or combination of outboard motors, ownership of which was acquired prior to the policy term."
Appellant concedes his outboard motor was in excess of twenty-five horsepower and that the motor was not endorsed on the policy prior to the accident. Also undisputed is the fact that Allstate received a letter from appellant within forty-five days after he acquired the hull and outboard motor, but subsequent to the accident, notifying Allstate of his intention to insure them.
The policy was issued to defendant on August 26, 1971 for a period of three years. It was in full force and effect on the date defendant acquired the hull and motor on March 11, 1972. A careful reading of the policy, and especially the exclusions contained therein, satisfies us that the incident sued upon was not excluded.
The above quoted portion of "Coverage EPersonal Liability" simply says Allstate agrees to insure the homewoner for sums which the latter is legally obligated to pay for property damage to which the policy applies caused by "an occurrence". This statement of coverage is then qualified and limited by certain "Exclusions". The exclusion pertinent here also is quoted above.
Our reading of the quoted exclusionary language shows the policy does not apply under personal liability coverage to property damage arising out of the operation or use of a water craft powered by an outboard motor of more than twenty-five horsepower only if such outboard motor is owned by the insured prior to the inception of the policy and not endorsed thereon. The only exception provided in the policy to the exclusion of an outboard motor owned at the inception of the policy and not endorsed thereon occurs when the insured reports in writing his intention to insure the outboard motor, "ownership of which was acquired prior to the policy term." Thus, the exclusionary language relied on by Allstate only applies to outboard motors owned by the insured prior to the inception of the policy period, and that fact is stated twice in Paragraph b. (2) of the Exclusions.
Such being the case, there is no language in the policy which excludes outboard *440 motors acquired after the inception of the policy term, as is the case before us, and the meaning of the word "acquisition" (at least insofar as it is applicable in this case) is rendered moot. Stated another way, the policy only excludes coverage when the water craft is powered by an outboard motor (or motors) in excess of twenty-five horsepower when that motor (or motors) is owned by the insured at the inception of the policy and does not exclude coverage of any outboard motor (ormotors) acquired after the inception of the policy.[1]
It is doubtful that Allstate intended this result when it drafted the policy issued to defendant. Nevertheless, the provisions of the policy are clear and it would be beyond the authority of this court to reform the contract to make the exclusionary provisions apply to outboard motors acquired after the inception of the policy. Insurance is a contract of adhesion, construed against the insurer who draws it. Since the insurance is applicable to the damage in suit under the above quoted "Coverage E, Personal Liability" and since there is no language whatever in the policy excluding coverage for personal liability for damages resulting from occurrences involving an outboard motor acquired after the inception of the policy period, Allstate was obligated to defend the suit and pay the judgment.
The record contains no evidence upon which we can make an award for damages resulting from Allstate's refusal to defend the suit. However, we have the authority to make our own estimation of the value of the services rendered by the attorneys for the defendant-appellant.[2] In this connection, we have taken into consideration, among other things, the dollar amount of damage involved and the facts that the trial of the case consumed one day or less and the issues were not complicated. We conclude that an attorney's fee in the amount of $650 would be reasonable.
For the reasons assigned, the judgment appealed from is affirmed insofar as it awards to plaintiff-appellee the sum of $1,349.74, together with legal interest from date of judicial demand, dismisses an exception of no right of action, and dismisses the third party demand against Pier 90 Marina. The judgment is reversed insofar as it dismisses the third party demand against Allstate Insurance Company and it is now ordered that there be judgment in favor of third party plaintiff-appellant, Wilburn P. Hansen, Jr., and against third party defendant-appellee, Allstate Insurance Company, for full reimbursement of the amount said third party plaintiff-appellant is required to pay under the judgment rendered against him in this suit, and in addition, the full sum of $650, together with legal interest from date of judicial demand until paid. All costs in both courts are to be paid by the third party defendant-appellee, Allstate Insurance Company.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Thus, we need not decide whether notice to insure must be given within 45 days of acquisition of the policy or of acquisition of the motor, since that phraseology applies only to motors owned at the time the policy period begins.
[2] Redding v. Cade, La.App., 158 So.2d 880; Gallagher v. Gallagher, 190 So.2d 916. See also American Legion v. Southwest Title & Ins. Co., La.App., 207 So.2d 393, annulled on other grounds, 253 La. 608, 218 So.2d 612.